IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| IRIS KITCHEN, DIAMONIQUE FRANKLIN, and ROSIE JONES, | |
|---|---|
| Plaintiffs, | 8:19CV107 |
| vs. | MEMORANDUM & ORDER |
| DSNO, Developmental Services of Nebraska Community Support Center; AUTISM CENTER OF NEBRASKA, OMNI BEHAVIOR, and ANGIE MITCHELL, | |
| Defendants. | |

This matter is before the Court on the defendants' motions to dismiss, Filing Nos. 40, 42, 43, and 46. In their skeletal *pro se* Amended Complaint, the plaintiffs ostensibly assert claims for unpaid wages, wrongful termination, conflict of interest, workplace discrimination, misrepresentation, workplace harassment, breach of contract, bad faith, Medicaid fraud, and defamation in apparent connection to disputes over the disputes over the provision of services to disabled persons who are subject to guardianships established in Douglas County, Nebraska, Court.

Plaintiff Iris Kitchen is apparently a present or former foster parent who at some point was paid to furnish care to disabled persons through agencies that administer state benefits. She alleges she was wrongfully underpaid, harassed with excessive visits and drug tests, belittled, wrongfully terminated, forced to repay the State, threatened, and ultimately had persons removed from her care. There are no allegations specific to the other plaintiffs. Defendants OMNI Behavior, Developmental

1

Services of Nebraska d/b/a DSN ("DSN") and Autism Center of Nebraska ("AC") (together, "the Providers") are agencies that deliver care to disabled persons and defendant Angie Mitchell is the court-appointed guardian of the disabled persons removed from plaintiff Iris Kitchen's care. The plaintiffs have submitted voluminous restricted documents to the Court. Filing Nos. 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, and 32.[1]

I. FACTS

From what the Court can ascertain, in their amended complaint, the plaintiffs allege employment discrimination by the providers, apparently for the vague offense of "trying to find a percentage of a whole number." They allude to harassment, belittling behavior, bad faith, unfair treatment, breach of contract, and discrimination by the defendants. They also vaguely refer to embezzlement.

In their motions to dismiss, the Providers assert that they are or were Nebraska Non-Profit Corporations that provide developmental disabilities services and habilitation services to developmentally disabled individuals. Plaintiff Iris Kitchen was an independent contractor of defendants DSN and AC. Defendant Providers argue the plaintiffs' amended complaint offers nothing but labels and conclusions which are not sufficient to state a claim for relief. Although they concede that claims of whistle-blowing, workplace discrimination, harassment, and Medicaid fraud could be interpreted

---

[1] Included in those documents are correspondence and attachments from the Nebraska Equal Opportunity Commission indicating that Ms. Kitchen alleges she has been discriminated against by defendant DSN by reason of her race. *See* Filing No. 32, at 10-11. However, although her Amended Complaint in this case contains generalized allegations of unfair treatment, unpaid wages, discriminatory treatment and harassment, there are no allegations connecting any alleged wrongdoing based on her race. Even considering the allegations set out in Ms. Kitchen's NEOC complaint, there is nothing other than a conclusory statement of race discrimination, without any facts from which the Court could discern any racially discriminatory animus. The factual allegations involved in this case involve overall dissatisfaction with disability services in the State of Nebraska, not claims of race discrimination.

2

as claims tied to federal laws, the plaintiffs fail to allege sufficient facts to support any arguably federal claims.

Defendant Omni moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). It asserts the plaintiff has not cited any federal statutes, treaties, or constitutional provisions that would afford her relief, nor provided any factual allegations supporting the claims. OMNI asserts the plaintiff does not have standing, in that she has not alleged she suffered an injury in fact that is concrete, and actual or imminent or alleged any causal connection between the injury and Omni's conduct, nor has she alleged that the injury can be remedied by a favorable decision. Defendants DSN and AC contend the plaintiffs' amended complaint offers nothing but labels and conclusions which are not sufficient to state a claim for relief. Defendant Angie Mitchell moves to dismiss for lack of subject matter jurisdiction, making both a facial attack and a factual attack on the Amended Complaint. She contends the plaintiffs' amended complaint is subject to dismissal on its face due to the absence of any federal question or diversity. In addition, she asserts a factual attack, contending this Court lacks jurisdiction based on two guardianship cases in Douglas County, Nebraska, Court. She argues that the plaintiffs are attempting to relitigate claims that were unsuccessfully asserted in the Guardianship proceedings. She also argues that the Court should abstain from exercising jurisdiction over her.

In support of her factual attack for lack of jurisdiction, defendant Mitchell has shown she was appointed as Guardian in Douglas County, Nebraska Probate cases PR 12-1231 and PR 14-950. Filing No. 19, Exs. 1 and 2. The Douglas County Probate Court issued Letters of Guardianship to Defendant Mitchell appointing her as Guardian

3

and vesting her with certain powers, including the power to select the ward's place of abode and giving necessary consents on behalf of the wards. *Id.*, Exs. 3 and 4. In both of the Guardianship cases, plaintiff Iris Kitchen attempted to intervene and asserted generalized complaints against the Guardian. *Id.*, Exs. 5 and 7. In both of the Guardianship proceedings, Plaintiff's Kitchen's attempts to intervene were denied. *Id.*, Exs. 6 and 8.

II. LAW

    A.    Fed. R. Civ. P. 12(b)(1)

Jurisdiction is a threshold issue for this Court. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-96 (1998); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). The Court is obligated to question its subject matter jurisdiction before proceeding to the merits of a plaintiff's case. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1990). Under the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. Pro. 12(h)(3).

Federal courts can properly assert jurisdiction under 28 U.S.C. § 1332, commonly referred to as "diversity of citizenship" jurisdiction, when that "the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir.2001) (citation omitted). In addition, the amount in controversy must be greater than $75,000.00 for diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a). In addition to diversity of citizenship jurisdiction,

4

subject matter jurisdiction is also proper where a plaintiff asserts "[a] non-frivolous claim of a right or remedy under a federal statute," commonly referred to as "federal question" jurisdiction. *Northwest South Dakota Prod. Credit Ass'n v. Smith*, 784 F.2d 323, 325 (8th Cir.1986).

One limit on the Court's subject matter jurisdiction is a legal principle known as the *Rooker-Feldman* doctrine, which provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments and state proceedings. *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005); *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). The principle recognizes the contours of state and federal jurisdiction underlying our federalism system by prohibiting "lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments." *Webb as next friend of K. S. v. Smith*, 936 F.3d 808, 816 (8th Cir. 2019). Put another way, a party who loses in state court "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994).

Apart from and in addition to the *Rooker-Feldman* doctrine, a legal principle known as the domestic relations exception to federal jurisdiction also stands as an independent bar to federal subject matter jurisdiction. *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994). With respect to family law matters, the domestic relations exception divests the federal courts of jurisdiction over a narrow range of cases implicating domestic relations issues, such as divorce, allowance of alimony, child custody, and

child support. See *Wallace v. Wallace*, 736 F.3d 764, 766 (8th Cir. 2013). Even "when a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony or child custody, federal courts generally will abstain from exercising jurisdiction." *Kahn*, 21 F.3d at 861. This doctrine precludes federal suit involving "a remedy which is essentially domestic—where, in addressing the same conduct involved in a state domestic proceeding, the effect of a remedy in the federal suit is to modify, nullify, or predetermine the domestic ruling of the state proceeding." *Wallace*, 736 F.3d at 767. No matter how styled, the domestic relations exception disallows domestic claims "cloaked in the 'trappings' of another type of" a federal claim. *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) (quoting *Congleton v. Holy Cross Child Placement Agency, Inc.*, 919 F.2d 1077, 1078–79 (5th Cir.1990)).

The party seeking to invoke federal jurisdiction carries the burden of proof on that issue. See *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). In a factual attack on the jurisdictional allegations of the complaint, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

B. Fed. R. Civ. P. 12(b)(6)

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007); *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon

6

which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In deciding a motion to dismiss under Rule 12(b)(6), a court must accept the allegations contained in the complaint as true and draw reasonable inferences in favor of the nonmoving party. *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010). Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Courts follow a "two-pronged approach" to evaluate Rule 12(b)(6) challenges. *Iqbal*, 556 U.S. at 679. First, a court divides the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id*. Second, the factual allegations must be parsed for facial plausibility. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 677. The Court should not "incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of Iqbal and Twombly." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). The question at this preliminary stage is not whether a plaintiff might be able to prove its claim, but whether

it has "adequately asserted facts (as contrasted with naked legal conclusions) to support" those claims. *Id.*

The court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 558, 556. When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679. Dismissal under Rule 12(b)(6) is appropriate only if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations. *O'Neal v. State Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011).

When reviewing a *pro se* complaint, the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a *pro se* complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes

by those who proceed without counsel.  See *McNeil v. United States*, 508 U.S. 106, 113 (1993).

III. DISCUSSION

The Court must first address its subject matter jurisdiction.  There is no indication that the plaintiffs and the defendants are citizens of different states and thus there is no basis for jurisdiction based on diversity of citizenship.  Even affording the plaintiffs' Amended Complaint the most liberal construction, the Court finds the plaintiffs also fail to allege a non-frivolous claim of right or remedy under a federal statute.

More importantly, this Court lacks subject matter jurisdiction to entertain this suit because of the limited authority of federal courts to revisit state court proceedings, particularly with respect to state court determinations regarding domestic relations.  The Court lacks subject matter jurisdiction over the plaintiffs' case under both the *Rooker-Feldman* doctrine and the domestic relations exception.  Read liberally, the plaintiffs' amended complaint catalogs grievances related to a matter that is the subject of state court proceedings.  The plaintiff is essentially asking this Court to determine that a court-appointed guardian and disabilities services agencies committed wrongdoing in connection with providing services to individuals subject to a state-court guardianship.  The lower federal courts are simply not the appropriate forum in which to challenge state court decisions in such matters.

In addition, plaintiff's allegations against the named defendants are merely the "unadorned, the-defendant-unlawfully-harmed-me" accusations that the Supreme Court has held are unacceptable.  *Iqbal*, 556 U.S. at 678.  Although *pro se* complaints are construed liberally, the plaintiff still must allege facts in support of the claims advanced,

and this Court will not assume any facts that are not alleged. In general, the plaintiffs' allegations are incomprehensible, conclusory, and/or frivolous. The amended complaint is subject to dismissal for failure to state a claim as well.

In view of this determination, the Court need not address the defendants' other contentions, such as lack of standing. Accordingly, the plaintiffs' claims will be dismissed without prejudice. *See Romero v. Pinnacle Equities, LLC*, 283 Fed.App'x 429, 431 (8th Cir. 2008) (modifying dismissal to be without prejudice where basis for dismissal was lack of subject matter jurisdiction).

Dated this 3rd day of December 2019.

                            BY THE COURT:

                            s/ Joseph F. Bataillon
                            Senior United States District Judge